Case 4:20-cv-00585   Document 17   Filed on 03/23/21 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
March 23, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHANNON BRUMLEY, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | Civil Action No.: 4:20-cv-585 |
| § | |
| ANDREW SAUL, § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
| § | |
| *Defendant.* § | |

## MEMORANDUM AND ORDER

Brumley filed the present action under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying his request for supplemental security income. Brumley and the Commissioner filed cross-motions for summary judgment. ECF No. 13, 16. Having considered the motions, the record, and the applicable law, the Court **DENIES** Brumley's Motion (ECF No. 13), **GRANTS** the Commissioner's Motion (ECF No. 16) and **AFFIRMS** the final decision of the Commissioner.[1]

### I. Background

**A. Procedural History**

Brumley filed an application for supplemental security income under Title XVI, alleging disability beginning November 8, 2017. Following the denial of his application and subsequent request for reconsideration, Brumley requested a hearing before an Administrative Law Judge ("ALJ") and a hearing took place on April 11, 2019. Tr. 31-52, 92-94. The ALJ issued a decision

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including entry of final judgment. ECF No. 11.

1

on May 20, 2019, finding Brumley was not disabled within the meaning of the Social Security Act. Tr. 13-23. The Appeals Council denied review on July 30, 2019 and the ALJ's decision became the final decision of the Commissioner. Tr. 1; *see* 20 C.F.R. §§ 404.981, 416.1481.

**B. Standard for Review of the Commissioner's Decision**

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard and (2) whether the Commissioner's decision is supported by substantial evidence. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). When reviewing the Commissioner's decision, the Court does not reweigh the evidence, try the questions de novo, or substitute its own judgment for that of the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id*.

**C. Disability Determination Standards**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the ALJ decides whether the claimant is currently working or "doing substantial gainful activity." *Id*. at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. At the second step, the ALJ must determine whether the claimant has a severe impairment. *Id*. at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant's impairment does not have a de minimis impact on her ability to work, she is not disabled. *Salmond v. Berryhill*, 892

F.3d 812, 817 (5th Cir. 2018). The third step of the sequential analysis requires the ALJ to determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. p, app. 1. If so, the claimant is disabled. If not, the ALJ must determine the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011). At step four, the ALJ determines whether the claimant's RFC permits her to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If not, the ALJ determines at step five whether the claimant can perform other work that exists in the national economy. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The claimant bears the burden to prove disability at steps one through four, but the burden shifts to the Commissioner at step five. *Newton*, 209 F.3d at 452-53.

**D. The ALJ's Decision**

The ALJ performed the standard five-step sequential analysis. First, the ALJ found Brumley has not engaged in substantial gainful activity since November 8, 2017. Next, the ALJ determined that Brumley's chronic obstructive pulmonary disease; cerebrovascular accident; spondylosis of the lumbar spine; malunited fracture of the ribs; bipolar disorder; and attention deficit hyperactivity disorder ("ADHD") constitute severe impairments. Tr. 15. At step three, the ALJ determined that none of Brumley's impairments, alone or in combination, meet or equal the severity of one of the listed impairments in Appendix 1 after specifically considering Listings 1.00 for musculoskeletal system, 3.00 for respiratory disorders, 11.00 for neurological disorders, and 12.04 and 12.11 for his mental impairments. Tr. 16. The ALJ found Brumley has the RFC to

> perform light work . . . except [Brumley] can sit for six out of eight hours in a workday, and also stand and/or walk for six out of eight hours in a workday;

3

> [Brumley] can occasionally climb ropes, ladders, and scaffolds; he is capable of frequent gross manipulation on the right; he must avoid concentrated exposure to extreme heat, fumes, noxious odors, dusts, mists, gases, and poor ventilation; [he] would also be limited to simple tasks only.

Tr. 17. The ALJ noted Brumley has no past relevant work and, therefore, did not consider the transferability of job skills. Tr. 21-22. Considering Brumley's age, education, work experience, and RFC, the ALJ determined that jobs exist in significant numbers in the national economy that Brumley can perform. Tr. 22. For that reason, the ALJ concluded Brumley had not been under a disability from November 8, 2017 through the date of his decision. Tr. 23.

## II. Analysis

In his Motion for Summary Judgment, Brumley argues the ALJ's RFC determination is not supported by substantial evidence. ECF No. 13 at 6. In particular, Brumley objects to the ALJ's finding that, although Brumley suffered a stroke affecting his right side, he can perform frequent gross manipulation with his right hand. *Id*. Brumley also suggests that, due to the "waxing and waning nature" of his mental impairments, the ALJ erred by failing to make a specific finding as to his ability to obtain *and* maintain employment. *Id*. Last, Brumley argues the ALJ erred at step 5 by relying on the vocational expert's testimony.

**A. Substantial evidence supports the RFC finding.**

   **1. Substantial evidence supports the RFC finding with respect to Brumley's ability to use his right hand.**

One week prior to the administrative hearing, Brumley suffered a stroke which affected his right side. The ALJ specifically considered the records from Brumley's hospitalization for the stroke. Tr. 19. While still in the hospital, Brumley complained of numbness, tingling, and difficulty holding objects with his right hand, and testified at the administrative hearing that there has been no improvement in the numbness and tingling. Tr. 37, 1690, 1691, 1695. However, the

4

hospital records demonstrate that he maintained a normal range of motion, Tr. 1672, 1680, 1690, 1696, and had "good handgrip strength." Tr. 1690. The ALJ's decision clearly demonstrates that he considered the medical records, along with Brumley's subjective complaints of right-sided numbness/tingling and found that "the evidence of record does not fully support the claimant's allegations about the severity of these symptoms." Tr. 19. The ALJ accounted for Brumley's impairment of his right hand by limiting his RFC to include only frequent gross manipulation with his right hand. Tr. 21 ("Due to the claimant's [stroke], he is capable of frequent gross manipulation on his right side."). Therefore, Brumley's argument that "there is no medical evidence to support [the] finding" that he "retains the ability to perform gross manipulation with his right hand 'frequently[,]'" is without merit. ECF No. 13 at 7. To the extent Brumley argues the evidence requires a more limiting RFC than that found by the ALJ, Brumley asks this Court to reweigh the evidence and substitute its judgment for that of the ALJ, something this Court cannot do. *See Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977) (citations omitted) (explaining the reviewing court "may neither reweigh the evidence nor substitute its judgment for that of the Secretary.").

Brumley also argues that the RFC is not supported by substantial evidence because the ALJ erred by failing to more fully developing the record with respect to his right hand limitations. ECF 13 at 8-9. "The claimant has the burden of proof in establishing his disability." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). If the claimant does not provide sufficient evidence, the ALJ must make a determination based on the available evidence. *See* 20 C.F.R. § 404.1516. While the ALJ has the discretion to order a consultative examination, an examination at government expense is not required "unless the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision." *Jones v. Bowen*, 829 F.2d 524, 526

5

(5th Cir. 1987) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). Nothing in the record establishes that a consultative examination was required in order for the ALJ to make the disability decision. The medical evidence before the ALJ included hospital records detailing Brumley's subjective complaints of numbness and tingling after the stroke, as well as examination findings showing good grip strength. Tr. 1672, 1689-90. The ALJ made clear in his written decision that he considered this evidence and accounted for it by limiting Brumley's RFC to include only frequent gross manipulation with his right hand. Tr. 19. Thus, the ALJ did not err by failing to order a consultative exam.

Even if the Court were to find the ALJ had erred, Brumley has not shown he was prejudiced by the alleged error. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Newton*, 209 F.3d at 458; *see also Jones v, Astrue*, 691 F.3d 730, 733-34 (5th Cir. 2012). "A mere allegation that beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden." *Jones*, 691 F.3d at 734-35. Brumley has made no particularized showing of prejudice and has not identified any other evidence that would have changed the ALJ's decision. To the extent Brumley complains that the ALJ erred by failing to develop the record, his argument is without merit. *See Manzano v. Berryhill*, No. 4:16-CV-3496, 2018 WL 1518558, at *9 (S.D. Tex. Mar. 28, 2018) (rejecting the claimant's argument that the ALJ failed to develop the record).

**2. The ALJ did not err by failing to make a separate finding regarding Brumley's ability to maintain employment.**

As a subset of his argument that the RFC is not supported by substantial evidence, Brumley argues the ALJ erred by failing to make a specific finding that he has the ability, despite his diagnosis of bipolar disorder, to *maintain* work on a regular and continuing basis. ECF No. 13 at

6

9. An ALJ is not required to make a separate finding on the claimant's ability to maintain employment in every case. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). "[R]eviewing courts generally assume that . . . [the] RFC include[s] implicit findings of [a claimant's] ability to work on a regular and continuing basis." *Todd v. Astrue*, Civil Action No. H-09-2687, 2010 WL 3894102, at *12 (S.D. Tex. Sep. 30, 2010). Instead, a separate finding as to the claimant's ability to maintain employment is required in cases where the claimant's impairment "waxes and wanes in its manifestation of disabling symptoms." *Frank*, 326 F.3d at 619.

Brumley argues the ALJ was required to make a separate finding as to his ability to maintain employment because his bipolar disorder, "by its very nature," is an impairment that waxes and wanes in severity. ECF No. 13 at 9-10. Courts in this circuit have rejected the notion that a mere diagnosis of bipolar disorder automatically requires the ALJ to make a separate finding regarding the ability to maintain employment. *See Barratt v. Astrue*, No. 07-51067, 2008 WL 2325636, at *1-2 (5th Cir. 2008) (per curiam) (rejecting argument that ALJ was required to make express finding as to claimant's ability to maintain employment in spite of bipolar disorder); *Crainey v. Astrue*, Civil Action No. 4:11-CV-613-A, 2012 WL 5846406, at *7 (N.D. Tex. Nov. 1, 2012), *adopted by* 2012 WL 5860324 (Nov. 19, 2012) (rejecting argument that the very nature of claimant's bipolar disorder required a separate finding that claimant maintain employment, noting "numerous courts have required something more than a mere diagnosis of bipolar disorder to determine that the impairment waxes and wanes . . . ."); *Latoski v. Astrue*, No. 2:09-CV-0198, 2011 WL 4526086, at *12 (N.D. Tex. Sept. 13, 2011), *adopted by* 2011 WL 4526086 (N.D. Tex. Sept. 28, 2011) (finding mere diagnosis of bipolar disorder did not provide factual predicate required to necessitate separate finding). Thus, an ALJ is not required to make a separate finding regarding a claimant's ability to maintain employment unless the claimant demonstrates that his

bipolar disorder or mental impairment "results in intermittent periods of incapacity." *Crainey*, 2012 WL 5846406, at *8.

The record evidence does not demonstrate that Brumley's mental health impairments result in intermittent periods of incapacity or compromise his ability to maintain employment for a significant period. Although Brumley cites to several psychiatric hospitalizations as support for his argument that his bipolar disorder waxes and wanes, each hospitalization occurred after a period of drug or alcohol abuse. Tr. 1244-45 (2011 hospitalization following a drug-induced episode during which the police found Brumley with multiple self-inflicted wounds to his arms and hands and he was discharged the next day); Tr. 1238 (2014 hospitalization for suicidal thoughts after alcohol relapse and he requested and was discharged the next day so he could attend work); Tr. 1233 (2016 hospitalization following a few days of drug use; he was discharged within a few hours); Tr. 1194 (2018 hospitalization following attempted suicide via overdose). The treating psychiatrist during Brumley's 2018 hospitalization noted that his "various psychiatric diagnoses (bipolar, schizoaffective disorder and symptoms including multiple suicide attempts and non-suicidal self injury) occurred in the context of active drug abuse, and patient admits that during rare periods of sobriety his mood and behavior are unremarkable." Tr. 1205. Furthermore, Brumley testified that he is "very diligent with [his] mental health and . . . medication[s,]" and had been stable when compliant with his medications. Tr. 38-39. Brumley also testified that when on his medication, he does not isolate at all, is sociable, gets things done around the house, and feels good about himself. Tr. 48.

In short, nothing in the record demonstrates that Brumley's bipolar disorder or mental impairments, in the absence of his substance use, cause intermittent periods of incapacity. To the contrary, Brumley's own statements and testimony demonstrate that he is stable during periods of

8

sobriety and does well when taking medication. Therefore, the ALJ did not err by failing to make a separate finding as to Brumley's ability to maintain employment. *See Crainey*, 2012 WL 5846406, at *8 (finding claimant failed to show bipolar disorder waxed and waned where record demonstrated very mild symptoms during periods of sobriety and exacerbated symptoms during periods of substance abuse); *Pena v. Saul*, Civil Action No. 7:19-CV-0005, 2019 WL 8223588, at *23 (S.D. Tex. Dec. 26, 2019), *adopted by* 2020 WL 1234281 (finding substantial evidence supported ALJ's decision where "Plaintiff has not shown that her mental health symptoms wax and wane in a way that precludes employment even while on medication.").

### B. The ALJ did not err at step five.

In response to a hypothetical question describing an individual who, among other limitations, could perform only "simple tasks" and was limited to "frequent" gross manipulation with the right hand, the VE testified that such a claimant could perform the jobs of cashier II, small parts assembler, and office helper. Tr. 49-50. Brumley argues the ALJ erred by relying on this testimony because, for various reasons, the testimony conflicts with requirements for those jobs as described in the Dictionary of Occupational Titles ("DOT"). None of Brumley's arguments present a basis for remand.

#### 1. No direct conflict exists between the limitation of "simple tasks" and the reasoning level required for each of job identified by the VE.[2]

No direct conflict exists between the VE's testimony—that an individual limited to "simple tasks" could perform the jobs of cashier II, small parts assembler, or office helper—and the reasoning levels contained in the DOT descriptions for those jobs. The cashier II description

---

[2] The Court finds no direct conflict exists in this case. A direct conflict arises when "the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT." *Carey v. Apfel*, 230 F.3d 131, 145-46 (5th Cir. 2000). A direct conflict requires the ALJ to explain or resolve the conflict in his decision. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 609 (E.D. Tex 2009).

9

includes a reasoning level of three[3] while the small parts assembler and office helper descriptions include a reasoning level of two.[4]

The RFC finding by the ALJ did not limit Brumley to a specific reasoning level but did limit him to "simple tasks only." Tr. 50. Brumley argues the job requirements of Level 2 and Level 3 reasoning exceed his ability to perform only simple tasks. ECF No. 13 at 12. Brumley's argument "conflates two different concepts: the type of tasks that [he] can complete and the level of instructions [he] can handle." *Ramos v. Saul*, Case No. 1:19-CV-109, 2020 WL 5097160, at *8 (S.D. Tex., July 29, 2020), *adopted by* 2020 WL 5097066 (S.D. Tex. Aug. 28, 2020). While the ALJ limited Brumley to simple tasks, he imposed no limits on Brumley's ability to carry out instructions or deal with problems. Although "the Fifth Circuit has not addressed the precise issue," several federal appellate courts "have held that a person who is limited to simple tasks and simple decisions can be asked to perform jobs requiring Level 2 and Level 3 reasoning." *Id.* (collecting cases). Furthermore, lower courts within this circuit have rejected the argument that a direct conflict exists between an RFC limiting a claimant to simple tasks and simple work-related decisions and a job with Level 3 reasoning. *See Burnham v. Saul*, Civil Action No. H-19-1564, 2020 WL 3259619, at *6 (S.D. Tex. Apr. 14, 2020), *adopted by* 2020 WL 3250978 (S.D. Tex. June 13, 2020) (collecting cases); *Lindsey v. Saul*, Civil Action No. 4:20-CV-303, 2021 WL 933748, at *8 (S.D. Tex. Jan. 20, 2021), *adopted by* 2021 WL 931694 (S.D. Tex. Mar. 10, 2021) ("[T]he case law 'supports a determination that a limitation to 'simple, repetitive, routine tasks' could support work with a reasoning level of two or three.") (citations omitted); *Arrington v.*

---

[3] Level 3 reasoning is defined in DOT as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Dictionary of Occupational Titles, Vol. II, App. C § III.
[4] Level 2 reasoning is defined in the DOT as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. *Id.*

*Colvin*, Civil Action No. 4:12-cv-01390, 2013 WL 12100718, at *12 (S.D. Tex. Sep. 18, 2013) (finding no direct conflict between limitation of simple, repetitive tasks and the ability to perform jobs requiring reasoning level of two or above). In addition, numerous district courts within this circuit have held that individuals who are limited to simple tasks can perform jobs requiring Level 2 reasoning. *Swindle v. Colvin*, Civil Action No. H-12-0323, 2013 WL 12106130, at *6 (S.D. Tex. Sept. 23, 2013) (collecting cases).

At best, the VE's testimony that an individual limited to simple tasks could perform jobs requiring Level 2 or 3 reasoning creates an implied conflict. In the instance of an implied conflict between the VE's testimony and the DOT job requirements, the ALJ may properly rely on the VE's testimony that his opinions conform to the DOT without expressly addressing the conflict. *Carey v. Apfel*, 230 F.3d 131, 146 ("To the extent there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . the ALJ *may* rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.") (emphasis in original); *Veal*, 618 F. Supp. 2d at 609 (explaining that, when an implied conflict does not undergo adversarial development at the hearing, the ALJ may accept and rely on the vocational expert's testimony without resolving a later-proffered conflict). The VE in this case testified that his "testimony conform[ed] both to the Dictionary of Occupational Titles as well as related publications[.]" Tr. 50. Thus, the ALJ was not required to address an implied conflict in his decision. Furthermore, the ALJ gave Brumley's counsel the opportunity to cross-examine the VE and his counsel declined to ask any questions or identify any conflict between the VE's testimony and the DOT. Tr. 50-51. As a result, Brumley waived the issue and is not entitled to remand on the basis of an implied conflict. *See Arrington*, 2013 WL 12100718, at *12 (citation omitted) (citing *Carey*, 230 F.3d at 146-47) ("Because [the claimant's attorney] did not explore these

alleged conflicts at the hearing, the ALJ's decision to rely on the vocational expert's testimony does not require a remand now.").

2. **No direct conflict exists between the limitation of "frequent gross manipulation on the right" and the DOT requirements for Small Parts Assembler.**

Brumley also argues the job of small parts assembler as described in the DOT requires constant handling and fingering and, therefore, conflicts with the hypothetical posed to the VE describing an individual who can perform "frequent" gross manipulation. Even assuming that handling and fingering are the same requirement as gross manipulation, Brumley's argument rests on the same inference identified in *Carey v. Apfel*—that the job requires constant bilateral handling and fingering. 230 F.3d 131 (5th Cir. 2000) (finding claimant with one arm could perform jobs because the DOT listings did not require bilateral fingering or handling). Like the listings at issue in *Carey*, the DOT listing for small parts assembler does not require bilateral handling and fingering. *Id*. at 146. Therefore, the VE's testimony that Brumley could perform this job despite his gross manipulation limitation in his right hand does not pose a direct conflict with the DOT. *Id*.

At best, Brumley complains of an implied conflict and the ALJ was entitled to rely on the VE's testimony stating that his opinions conformed to the DOT. Tr. 50. Brumley's counsel was given the opportunity to cross examine the VE during the administrative hearing but declined to do so. Tr 51. Thus, Brumley is not entitled to remand based on an implied conflict between the DOT listing for small parts assembler and the VE's testimony. *See Arrington*, 2013 WL 12100718, at *12 (citation omitted) (citing *Carey*, 230 F.3d at 146-47).

12

**3. The ALJ's hypothetical questions correctly included RFC limitations which are supported by substantial evidence.**

Brumley also contends the ALJ erred by relying on the VE's responses to hypothetical questions which included the ability to perform "frequent gross manipulation on the right." This argument rests on Brumley's assertion that the RFC is not supported by substantial evidence. As discussed above, the Court finds substantial evidence supports the RFC. Therefore, the ALJ did not err by including the ability to perform frequent gross manipulation on the right in the hypothetical questions posed to the vocational expert.

### III. Conclusion

For the reasons stated above, the Court concludes that the ALJ's decision denying benefits is supported by substantial evidence and was not error. Therefore, the Court recommends the Commissioner's Motion (ECF No. 16) be **GRANTED**, Brumley's Motion (ECF No. 13) be **DENIED**, and the final decision of the Commissioner be **AFFIRMED**.

Signed at Houston, Texas on March 23, 2021.

_____
Christina A. Bryan
United States Magistrate Judge